UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID L. ALVIA,                        :
                                       :
      Plaintiff,                       :
                                       :
v.                                     :        Case No. 3:15-cv-1162(RNC)
                                       :
CITY OF WATERBURY,                     :
VERNON RIDDICK,                        :
THOMAS STRACHAN,                       :
MATTHEW LENNON,                        :
MICHAEL SABOL,                         :
                                       :
      Defendants.                      :

RULING AND ORDER

      Plaintiff David L. Alvia brings this action under 42 U.S.C.

§ 1983 against the City of Waterbury and the following members of

the Police Department ("WPD"): Chief Vernon Riddick, Officer

Thomas Strachan, Officer Matthew Lennon, and Officer Michael

Sabol.  Plaintiff claims that Officers Sabol and Lennon used

excessive force in effecting his arrest, in violation of his

rights under the United States and Connecticut Constitutions.  He

also brings federal and state law false arrest and malicious

prosecution claims against Officer Strachan, and state law claims

for battery, intentional infliction of emotional distress

("IIED"), negligence, and hate crimes against various defendants.

He claims that the City and Chief Riddick are liable under § 1983

and in negligence for failing to train and supervise Officers

Sabol and Lennon, and that the City is liable under state

statutes for other claims.  Defendants move for summary judgment

on all but the excessive force claims against Officers Sabol and

Lennon.  For reasons explained below, the motion is granted as to

all claims of false arrest, malicious prosecution, and excessive

force under the Connecticut Constitution; granted as to all

claims against Chief Riddick and Officer Strachan; granted as to

the municipal liability and negligence claims against the City

related to supervising, training, and hiring officers; and denied

as to the other claims.

I. Background

    The record shows the following.  On June 25, 2012, plaintiff

was a passenger in a vehicle operated by Peter Haskell.  While

the vehicle was stopped at a red light, Officer Strachan and non-

defendant Officer Jeffrey Arroyo pulled up alongside the vehicle

in a police cruiser.  Officer Strachan signaled Haskell to roll

down his window, and Haskell complied.  Officer Strachan smelled

burnt marijuana and asked Haskell if he had been smoking.

Haskell admitted that he had.[1]According to defendants, Officer

Strachan then told Haskell to pull over to the side of the road.

Plaintiff disputes this account, but does not dispute that when

the light turned green, Haskell took off and entered an

interstate highway.  The officers turned on the police cruiser's

overhead lights and followed Haskell, who drove at a "high rate

of speed."  Eventually, Haskell exited the highway and parked the

vehicle.  Around this time, another group of police officers,

---

[1] Plaintiff now admits that he had been smoking marijuana that night as well,
but there is no evidence that he was asked about this at the time or that
either of the officers observed signs he had been smoking.

including Officers Sabol and Lennon, arrived.  Haskell and plaintiff ran into a wooded area and the officers chased them. Officers Strachan and Arroyo, who had lost sight of Haskell's vehicle on the highway, eventually found the vehicle and followed everyone into the wooded area.

It is undisputed that Officer Sabol found plaintiff in the wooded area and, at some point, punched him in the face with a closed fist.  According to plaintiff, when he saw Officer Sabol approaching, he stopped fleeing and put his hands in the air. Officer Sabol then punched him in the face, and Officers Sabol, Lennon, and possibly others threw him around and beat him with their hands and feet before handcuffing him.  As he was being escorted out of the woods, officers called him Mexican slurs and either Sabol or Lennon stated, "You're a Mexican crybaby and probably illegal; no one give's a shit about you."[2]  According to Officer Sabol, plaintiff continued to flee when he approached, so he grabbed plaintiff's right arm and plaintiff resisted.  He punched plaintiff in the face to "gain pain compliance," and then quickly took plaintiff to the ground.  Officer Lennon arrived and placed a knee across plaintiff's back to assist in handcuffing him.After being placed in a police cruiser, plaintiff asked to be brought to a hospital.  According to plaintiff, the officers laughed at his request.  At some point, apparently after being brought to the station, someone did bring him to a hospital.  A

---

[2] Plaintiff is of Ecuadorian descent.

CT scan revealed multiple fractures of plaintiff's jaw, which eventually required a closed reduction surgical procedure.  Later that night, Officer Strachan filed a charge against plaintiff for "interfering with a police officer."  <u>See</u> Conn. Gen. Stat. § 53a-167a.  He spent a night in jail and was released the next day without a bond.  The charge was nolled about six months later, on December 11, 2012.

After the arrest, Officer Sabol filled out an outdated version of the WPD's "Response to Resistance" form, also known as a "Use of Force" form, describing the incident.  Per WPD policy, the circumstances surrounding use of force must be reviewed by several layers of supervisors, including a Sergeant, Lieutenant, Division Commander, and Bureau Commander.  Sabol's supervising Sergeant, Lieutenant, and Division Commander reviewed the report and determined that Sabol's "response to resistance [was] within [WPD] policy and procedure."  None recommended discipline.  Contrary to the stated policy, no Bureau Commander appears to have reviewed the report.

Immediately after his release, plaintiff filed a citizen's complaint regarding Officer Sabol's use of force.  About a week later, plaintiff was interviewed by the Waterbury Police Internal Affairs ("IA") division as part of an IA investigation into the incident.  Eventually, Officer Sabol was cleared of any wrongdoing and not disciplined.  Chief of Police Riddick had final review authority over internal affairs investigations.

Prior to the incident involving plaintiff, Officer Sabol had been terminated due to off-duty misconduct. During a party at Sabol's home in 2004, he and several other off-duty officers were involved in a physical altercation. Sabol beat and restrained an individual, causing him to lose consciousness and suffer injuries requiring a hospital visit. Sabol was terminated for violating WPD rules and later entered a nolo contendre plea to two counts of assault. In 2008, he was reinstated without back pay after the police union filed a grievance on his behalf. In 2016, he received a pardon from the State of Connecticut.

Prior to the incident at issue here, Officer Sabol also had been the subject of two IA investigations involving on-duty conduct.[3] Neither resulted in a finding of wrongdoing. Records of the investigations have been destroyed pursuant to the WPD's document retention policies, and nothing in the record sheds light on what led to the complaints.

Plaintiff has retained an expert on police practices named Richard Rivera. Rivera produced several reports opining on the incident involving plaintiff as well as the WPD's general procedures, policies, practices, and training related to the use of force. According to Rivera, the WPD failed to train officers in "state of the art use of force and de-escalation techniques." He also found numerous systemic problems related to how the WPD

---

[3] Officer Sabol also was the subject of an IA complaint and lawsuit after the incident involving plaintiff. The case is set for trial in March 2018. See Goodman v. Waterbury, UWY-CV13-6022089-S (Sup. Ct. Waterbury).

investigated complaints: accepting "joint narratives" in use of force investigations; occasionally failing to conduct routine reviews of use of force reports; failing to fully enforce WPD standards regarding reporting and IA auditing; and failing to implement an "early warning system." Relying on deposition testimony in another case against the City of Waterbury,[4] he identified 68 complaints of excessive force against officers between 2005 and 2010.[5] Of these, none were "sustained" and 46 listed "no outcome,"[6] results inconsistent with data from other police departments.

II. Discussion

Defendants move for summary judgment on all but the excessive force claims against Officers Sabol and Lennon. Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether this standard is met, the evidence must be viewed in the light most favorable to the non-

---

[4] Gonzalez v. Waterbury Police Dep't, No. 3:12-cv-478 (SRU) (D. Conn.).

[5] Rivera notes that while there were 68 recorded cases, some involved multiple officers. He estimates that, had separate complaints been filed, there would have been approximately 132 complaints of excessive force.

[6] One officer resigned shortly after an incident of alleged excessive force.

moving party.  Id. at 255.

    A.    Count 4: Municipal & Supervisor Liability

    Plaintiff claims that Chief Riddick and the City should be
liable for the allegedly excessive use of force during his
arrest.  A defendant may be liable under section 1983 if he,
acting "under color of any statute, ordinance, regulation,
custom, or usage of any State . . ., subjects or causes [a
plaintiff] to be subjected" to a constitutional deprivation.  42
U.S.C. § 1983.  To hold a municipality liable, a plaintiff must
show that "the alleged unlawful action implemented or was
executed pursuant to a governmental policy or custom." See
Reynolds v. Giuliani, 506 F.3d 183, 190-91 (2d Cir. 2007) (2d
Cir. 2008) (citing Monell v. Dep't Social Servs. City of New
York, 436 U.S. 658, 695 (1978)).  Absent an express written
policy, it suffices to show that an injury was caused by a
municipal officer responsible for establishing final policy.
Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  To hold
a supervisor liable for a subordinate's actions, a plaintiff must
show that the supervisor was "personal involved," via "direct
participation, or failure to remedy the alleged wrong after
learning of it, or creation of a policy or custom under which
unconstitutional practices occurred, or gross negligence in
managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d
Cir. 1996).

    Plaintiff's constitutional claims against Chief Riddick and

the City are based on their alleged failure to adequately train
or supervise Officers Sabol and Lennon.  To support either claim,
plaintiff must show that defendants' failure to act amounted to
"deliberate indifference to the rights of persons with whom the
police came in contact."  Reynolds, 506 F.3d at 192.  Deliberate
indifference is a "stringent standard of fault": the "operative
inquiry is whether th[e] facts demonstrate that the policymaker's
inaction was the result of 'conscious choice' and not 'mere
negligence.'"  Cash v. Cty. of Erie, 654 F.3d 324, 334 (2d Cir.
2011) (citations omitted).

Plaintiff fails to produce sufficient evidence to support a
failure-to-supervise deliberate indifference claim.  To support
such a claim, plaintiff "must show that the need for more or
better supervision to protect against constitutional violations
was obvious."  Vann v. City of New York, 72 F.3d 1040, 1049 (2d
Cir. 1995) (citing City of Canton v. Harris, 489 U.S. 378, 380
(1989)).  An "obvious" need may be demonstrated by "repeated
complaints of civil rights violations" followed by "no meaningful
attempt on the part of the municipality to investigate or
forestall further incidents."  Id.  Here, plaintiff has shown that
Officer Sabol was suspended eight years prior to the incident
following a violent off-duty incident and was the subject of two
unspecified civil rights complaints that were not substantiated

by the IA review process or, apparently, by any other evidence.[7]
Defendants' failure to more closely supervise Sabol under these
circumstances does not rise to the level of deliberate
indifference.[8]

The WPD's general practices regarding excessive force
complaints also do not support a finding of deliberate
indifference.  Plaintiff's expert reports that a relatively low
number of complaints of excessive force were "substantiated" by
IA investigations and that officers sometimes failed to follow
certain procedures related to complaints.  He bases much of his
findings and opinions on depositions conducted in another recent
case against the WPD, Gonzalez v. Waterbury Police Dep't.  As
Judge Underhill concluded in that case, although the evidence
"raise[s] sweeping concerns about the competency of Waterbury's
Internal Affairs Division," it fails to establish a pattern or
practice of unconstitutional deprivations by WPD officers

---

[7] Although WPD records regarding these incidents were destroyed, plaintiff has
not shown that either incident resulted in a lawsuit nor has he produced any
testimony regarding the incidents.

[8] Compare Vann, 72 F.3d at 1042, 1051 (summary judgment inappropriate where
officer was identified by department as "violent-prone," had a personality
disorder manifested by quick-tempered demands for "respect" escalating into
physical confrontations, was subject of numerous complaints by civilians and
colleagues, was disciplined several times and placed on restricted duty, and
there was systematic lack of communication to supervisory divisions regarding
new civilian complaints), with Selvaggio v. Patterson, 93 F. Supp. 3d 54, 79
(E.D.N.Y. 2015) (granting summary judgment where officer was subject of a
single disputed excessive force complaint prior to incident); Outlaw v. City
of Hartford, No. 3:07-cv-1769(GWC), 2015 WL 1538230, at *6 (D. Conn. Apr. 6,
2015) (granting summary judgment where one officer was subject of complaints
of excessive force ten years prior and other more recent acts of violence, and
second officer was subject of two excessive force complaints with one
resulting in remedial action); Manville v. Town of Greece, 892 F. Supp. 2d
469, 475 (W.D.N.Y. 2012) (granting summary judgment where officer had been
subject of prior substantiated excessive force complaint six years before
incident, was reprimanded, and later returned to duty).

sufficient to support a finding of deliberate indifference. Gonzalez, 2016 WL 953211, at *3 (D. Conn. Mar. 3, 2016). Plaintiff's expert here concludes that the WPD often failed to find wrongdoing and appropriately discipline officers after complaints, but he fails to identify specific complaints that the WPD failed to adequately review.  See id.  It is true, as plaintiff argues, that the existence of a complaint review procedure and evidence that some investigation typically takes place does not necessarily shield a municipality from liability. See Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 331 (2d Cir. 1986) (finding deliberate indifference despite "superficial" internal investigations).  But plaintiff offers no evidence that any officer actually used unconstitutionally excessive force prior to his encounter with the officers.[9]  Cf. Galindez v. Miller, 285 F. Supp. 2d 190, 198-99 (D. Conn. 2003) (denying summary judgment when plaintiff identified numerous excessive force complaints, zero complaints were "sustained" by internal affairs division, but approximately half of excessive force lawsuits during same period resulted in settlements).  Without any evidence that WPD officers engaged in unconstitutional conduct, a jury could not find a pattern or practice of such conduct.  Moreover, the procedural deficiencies in IA investigations that plaintiff identifies, including in his own

---

[9] The plaintiff in Gonzalez identified one lawsuit against a WPD officer that resulted in a judgment for the plaintiff some time between 2005 and 2010. Gonzalez, 2016 WL 953211, at 3.

case, are too minor to warrant an inference that the officers involved were deliberately indifferent to constitutional rights. Cf. id. (deliberate indifference finding supported by evidence that mandatory use of force forms filled out in "almost none" of excessive force investigations and no action taken on plaintiff's complaint until lawsuit filed almost one-and-a-half years later). At most, plaintiff has shown that some officers conducting IA investigations, possibly including Chief Riddick, negligently administered IA policies and procedures.

Plaintiff also fails to produce sufficient evidence to support a deliberate indifference claim based on a failure-to-train theory. As discussed above, plaintiff has not identified an underlying pattern or practice showing that WPD officers used unconstitutionally excessive force. Thus, he cannot show that Chief Riddick or other City officials were on notice that more training was needed. See Connick v. Thompson, 563 U.S. 51, 62-63 (2011) (rejecting failure-to-train claim based on Brady violation where, over ten year period, four convictions had been overturned based on Brady violations but none involved the type of violation at issue).

In sum, plaintiff cannot show that Chief Riddick or the City were deliberately indifferent to his constitutional rights by failing to better supervise or train Officers Sabol and Lennon. Accordingly, summary judgment is granted on the municipal and supervisory liability claims.

B. Counts II, III, VII, & VIII: False Arrest and Malicious
Prosecution

Plaintiff claims that Officer Strachan falsely arrested and
maliciously prosecuted him in violation of the Fourth Amendment
and state law.  Both federal and state law false arrest and
malicious prosecution claims require the plaintiff to show an
absence of probable cause.  Davis v. Rodriguez, 364 F.3d 424,
433-34 (2d Cir. 2004); Frey v. Maloney, 476 F. Supp. 2d 141, 147
(D. Conn. 2007).  "Probable cause to arrest exists when police
officers have knowledge or reasonably trustworthy information of
facts and circumstances that are sufficient to warrant a person
of reasonable caution in the belief that the person to be
arrested has committed or is committing a crime."  Walczyk v.
Rio, 496 F.3d 139, 157 (2d Cir. 2007) (quotations and citations
omitted).

Plaintiff's false arrest claim fails because defendants had
probable cause to arrest him.  It is undisputed that he was a
passenger in a vehicle that smelled of marijuana smoke and, after
a high-speed chase, he ran from several police officers.  Even
though plaintiff was not charged with a drug offense, the facts
known to the officers at the time of the arrest provided probable
cause for such a charge.  See Jaegly v. Couch, 439 F.3d 149, 154
(2d Cir. 2006) ("[I]t is not relevant whether probable cause
existed with respect to each individual charge, or, indeed, any
charge actually invoked by the arresting officer at the time of
arrest.").

Plaintiff points out that Officer Strachan has not explained why he attempted to stop Haskell's vehicle in the first place. According to plaintiff's own version of the facts, however, no attempted "stop" occurred until after Haskell sped away. According to plaintiff, Strachan pulled up alongside Haskell's vehicle and asked him to lower the window. Haskell voluntarily did so, admitted to smoking marijuana, then drove off. Strachan did not communicate an intention to stop the vehicle until he turned on the police cruiser's lights during the chase. See Michigan v. Chesternut, 486 U.S. 567, 574-76 (1988) (no "seizure" where police "chased" suspect but did not turn on siren or flashers, command suspect to halt, display weapons, or drive in aggressive manner). And given the smell of marijuana and Haskell's admission, it is beyond dispute that Strachan was justified in attempting to stop the vehicle. See Diamondstone v. Macaluso, 148 F.3d 113, 124 (2d Cir. 1998) (motor vehicle stop requires only reasonable suspicion driver is breaking a law).

Plaintiff points to United States v. Brock, which held that "the generalized smell of marijuana coming from a multi-occupant vehicle" does not provide probable cause to arrest any particular person in the vehicle. No. 13-cr-6025(CJS), 2016 WL 3743242 (W.D.N.Y. July 13, 2016). But his argument ignores his involvement in a high-speed chase and subsequent flight from police officers on foot. Though flight from police officers alone is generally insufficient to establish probable cause, it

is a "strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, [it is] a proper factor[] to be considered in the decision to make an arrest." Sibron v. New York, 392 U.S. 40, 66 (1968). See United States v. Martinez-Gonzalez, 686 F.2d 93, 99 (2d Cir. 1982) (where police had reasonable suspicion suspect was involved in drug activities, suspect's "hasty retreat transformed their already reasonable suspicions into probable cause to arrest").

Officer Strachan also had probable cause to prosecute plaintiff, defeating his malicious prosecution claim. Plaintiff was charged under Conn. Gen. Stat. § 53a-167a, which provides that "[a] person is guilty of interfering with a police officer when such person obstructs, resists, hinders or endangers any peace officer." The Connecticut Supreme Court has construed the statute broadly. See State v. Silva, 285 Conn. 447, 458-59, 938 A.2d 581, 589-90 (2008) (upholding conviction where defendant left scene of accident after being told she would receive infraction ticket and instructed to remain); State v. Aloi, 280 Conn. 824, 833-34 911 A.2d 1086, 1092-93 (2007) (upholding conviction where defendant suspected of trespassing refused to hand identification to police officer during Terry stop). As Judge Underhill noted, "Connecticut courts most frequently find illegal interference with a police officer where the officer makes a direct request, which the defendant refuses to comply

with, and it is that *refusal* that hinders or impedes the course of the investigation of the defendant or the performance of the officer's duties." <u>Acevedo v. Sklarz</u>, 553 F. Supp. 2d 164, 168 (D. Conn. 2008). Here, the officers' conduct – turning on the cruiser's lights, chasing after plaintiff in a vehicle and then on foot – were equivalent to a "direct request" that plaintiff refused by running away. Defendants thus had probable cause to prosecute plaintiff under the statute. Accordingly, summary judgment is granted as to plaintiff's false arrest and malicious prosecution claims.

C. Count V: Battery

Plaintiff claims that Officers Sabol and Lennon committed a state law battery in effecting his arrest. Defendants argue that this claim is "duplicative" of his excessive force claims and should be dismissed on that basis. They cite a New York case for the proposition that state constitutional torts are prohibited where an alternative remedy is available, <u>Stephen v. City of New York</u>, 2016 WL 6634903 (E.D.N.Y. 2016). But the reasoning in that case is based on a reading of New York state case law that does not apply here. Moreover, that court dismissed a state constitutional tort claim but allowed the plaintiff to proceed on a Fourth Amendment claim along with state assault and battery claims, exactly what plaintiff seeks to do here. Accordingly, summary judgment is not appropriate.

D. Count VI: Excessive Force

Plaintiff claims that Officers Sabol and Lennon used excessive force in effecting his arrest, in violation of the Connecticut Constitution. In _Binette v. Sabo_, 244 Conn. 23, 34-35 (1998), the Connecticut Supreme Court held that plaintiffs may bring claims for money damages under two provisions of the Connecticut Constitution that are similar to the Fourth Amendment. _See_ Conn. Const., art. I, §§ 7, 9. In that case, the plaintiffs alleged that police officers entered their home without a warrant, threatened arrest and imprisonment, and brutally beat one plaintiff while he was experiencing an epileptic seizure. _Id._ at 689-90.

There is a split of authority regarding what is required to state a _Binette_ claim. Several courts have held that _Binette_ claims are limited to "egregious" violations in private homes similar to the facts of _Binette_ itself. _See_ _Marshall v. Town of Middlefield_, No. 3:10-CV-1009(JCH), 2012 WL 601783, at *8 (D. Conn. Feb. 23, 2012) (collecting cases). Other courts have suggested that _Binette_'s scope is similar or equivalent to the scope of the Fourth Amendment. _See_ _Milardo v. City of Middletown_, No. 3:06-cv-01071(DJS), 2009 WL 801614, at *7 (D. Conn. Mar. 25, 2009) ("[T]here is no requirement that all factual allegations supporting unreasonable search and seizure claims under the Connecticut Constitution must correspond exactly to the facts in _Binette_."); _Yorzinski v. Alves_, 477 F. Supp. 2d 461, 470–71 (D. Conn. 2007) (_Binette_ did not . . . impose a limitation

on claims based on claimed police search and seizure violation of § 7.").  The most recent state appellate decision on <u>Binette</u>'s scope is <u>Martin v. Brady</u>, 64 Conn. App. 433, 439 (2001), which rejected a claim involving several legal entries into the plaintiff's home in which officers allegedly pushed the plaintiff to the ground and destroyed some property.  The Court found the allegations were not "sufficiently egregious" to state a claim. <u>Id.</u>  Several courts have relied on <u>Martin</u> in construing <u>Binette</u>'s scope.  <u>See</u> <u>Marshall</u>, 2012 WL 601783, at *8 (rejecting claim based on unlawful entry into driveway and detainment without reasonable suspicion); <u>Bauer v. City of Hartford</u>, No. 3:07-cv-1375(PCD), 2010 WL 4429697, at *12 (D. Conn. Oct. 29, 2010) (rejecting claim based on illegal entry into home); <u>Faulks, Jr. V. City of Hartford</u>, No. 3:08-cv-270(VLB), 2010 WL 259076, at *10 (D. Conn. Jan. 19, 2010) (rejecting claim where officers struck plaintiff with baton during arrest).

I conclude that <u>Binette</u>'s scope is limited to "egregious" searches and seizures similar to the facts of that case.  Though plaintiff here was badly injured, his claim does not involve an illegal entry into his home.  Accordingly, summary judgment is granted on the <u>Binette</u> claim.

### E. Count IX: IIED

Plaintiff brings an IIED claim against Officers Sabol, Lennon, and Strachan.  IIED requires a showing "(1) that the actor intended to inflict emotional distress or that he knew or

should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Educ., 254 Conn. 205, 210, 757 A.2d 1059 (2000) (citations omitted).

Plaintiff's claims against Officer Strachan stem from the charges Strachan filed against him and the subsequent prosecution; plaintiff does not claim that Strachan was personally involved in the alleged use of excessive force. Because there was probable cause for plaintiff's arrest and prosecution, his IIED claim fails as to Officer Strachan. See Moreno v. City of New Haven Dep't of Police Serv., 604 F. Supp. 2d 364, 376 (D. Conn. 2009) (dismissing IIED claim where plaintiff presented "no evidence as to the manner in which Defendants effectuated the otherwise lawful arrest or prosecution" because jury could not find sufficiently outrageous conduct).

Defendants contend that plaintiff cannot satisfy the first and fourth elements of an IIED claim as to Officers Sabol and Lennon. But they offer no argument regarding the first element. Whether defendants intended or knew their conduct would result in emotional distress is a disputed question of fact, making summary judgment inappropriate on that basis. Regarding the fourth element, they point out that plaintiff did not seek psychiatric

or other medical treatment related to his alleged distress.  But
the absence of treatment does not preclude an IIED claim under
Connecticut law.  <u>See</u> <u>Birdsall v. City of Hartford</u>, 249 F. Supp.
2d 163, 175-76 (D. Conn. 2003).  "Courts considering this issue
have held that use of excessive force in effecting an arrest can
state a claim for [IIED]".  <u>Brown v. Catania</u>, No. 3:06-cv-
73(PCD), 2007 WL 879081, at *10 (D. Conn. Mar. 21, 2007) (citing
<u>Orellana v. Sencio</u>, No. 3:04-cv-843(JBA), 2006 U.S. Dist. LEXIS
61326, at *10–11 (D. Conn. Aug. 29, 2006); <u>Birdsall</u>, 249
F.Supp.2d at 175; <u>McKelvie v. Cooper</u>, 190 F.3d 58, 63 (2d Cir.
1999)).  Thus, summary judgment is granted as to Officer Strachan
but denied as to Officers Sabol and Lennon.

    <u>F. Count 10: Recklessness/Negligence</u>

    Plaintiff claims that Officers Sabol, Lennon, and Strachan
engaged in reckless or negligent conduct.  Defendants argue that
plaintiff cannot maintain a negligence claim because he has also
brought excessive force and IIED claims.  Defendants cite New
York cases and one Connecticut case relying on New York law for
the proposition that a plaintiff cannot maintain a negligence
claim alongside an excessive force and IIED claim.  <u>See</u> <u>Frappier
v. City of Waterbury</u>, NO. 3:07-cv-1457(WWE), 2008 WL 4980362 (D.
Conn. Nov. 20, 2008) (citing New York cases).  I agree with
Judge Meyer that a negligence claim can be maintained with these
other claims.  <u>See</u> <u>Bussolari v. City of Hartford</u>, No. 3:14-CV-
00149 (JAM), 2016 WL 4272419, at *3 (D. Conn. Aug. 12, 2016).

As with plaintiff's IIED claim, however, summary judgment is
appropriate as to the negligence claim against Officer Strachan
because he was not personally involved in the alleged use of
excessive force and had probable cause to arrest and prosecute
the plaintiff.  See Brooks v. Sweeney, 299 Conn. 196, 210, 9 A.3d
347, 357 (2010) (dismissing negligent infliction of emotional
distress claim where arresting officer had probable cause for
arrest).

G. Counts XI & XII: Negligent Hiring & Negligent Failure to
Train or Supervise

Plaintiff claims that Chief Riddick and the City negligently
hired, supervised, and trained Officers Sabol and Lennon.
Municipal employees are generally entitled to governmental
immunity for negligent discretionary acts.  Gordon v. Bridgeport
Housing Auth., 208 Conn. 161, 166, 544 A.2d 1185 (1988).  One
exception is when "the circumstances make it apparent to the
public officer that his or her failure to act would be likely to
subject an identifiable person to imminent harm."  Evon v.
Andrews, 211 Conn. 501, 505, 559 A.2d 1131, 1134 (1989).
Plaintiff concedes that operating a police department is a
discretionary act, but he asserts that the identifiable victim
exception applies.  He cites cases holding that the exception
generally applies in excessive force cases.  See, e.g., Carey v.
Maloney, 480 F. Supp. 2d 548, 560 (D. Conn. 2007).

Though the exception may apply in some excessive force
cases, it does not apply in the context of plaintiff's claims

against Chief Riddick and the City.  Plaintiff was not an

"identifiable" victim whose harm was "imminent" to them.  Thus,

summary judgment is granted as to plaintiff's negligent hiring,

training, and supervising claims.

H. Counts XIII & XIV: Statutory Municipal Liability

Plaintiff claims that the City should be liable for money

damages under two statutes that govern municipal liability in

Connecticut.[10]  Defendants argue that, because, in their view,

most of plaintiff's claims fail, plaintiff cannot rely on these

statutes.  Because summary judgment is denied as to some

individual defendants, however, the statutory claims remain as

well.

I. Count XV: Hate Crimes

Plaintiff brings a "hate crimes" claim against Officers

Sabol and Lennon.  Conn. Gen. Stat. § 52-571c provides a civil

cause of action for violations of Connecticut's hate crime

statute.  See id. § 53-181j (defining crime of "intimidation

based on bigotry or bias").  Defendants do not contest whether

one or both of them may have committed a hate crime, but they

argue that plaintiff's claim fails because he failed to identify

exactly which one made racial slurs while he was being arrested.

Because there is a genuine dispute of fact as to which defendant

made racial slurs, summary judgment is inappropriate.

---

[10] Conn. Gen. Stat. § 52-557n defines the acts for which municipalities may be
held liable and § 7-465 defines the acts for which municipalities must
indemnify employees.

III. <u>Conclusion</u>

Defendants' motion for summary judgment [ECF No. 46] is granted in part and denied in part. All claims against Officers Strachan and Chief Riddick, and Counts II, III, IV, V, VII, VIII, XI, and XII are hereby dismissed.

So ordered this 31st day of March 2018.

_____/s/_____
Robert N. Chatigny
United States District Judge